J-A20018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.D.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.C. | : | |
| | : | |
| Appellant | : | No. 568 MDA 2017 |

Appeal from the Order Entered March 20, 2017
In the Court of Common Pleas of Columbia County
Orphans' Court at No(s):  365 of 2016

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.:                **FILED OCTOBER 23, 2017**

D.C. ("Mother") appeals from the order entered on March 20, 2017 in the Court of Common Pleas of Columbia County, which denied her motion to authorize travel. We affirm.

Mother, a citizen of the Russian Federation, and A.D.C. ("Father"), a citizen of the United States, were married in March 2012. At that time, Mother was an Assistant Professor at Mount Mercy University in Cedar Rapids, Iowa and Father was a Major in the United States Army, stationed in West Virginia.[1] In August 2012, Mother gave birth to twins, A.C. and K.C. ("Children"). Following Children's birth, Mother relocated to Bloomsburg, Pennsylvania in Columbia County.

---

[1] Father retired from the United States Army in October 2016. He subsequently relocated to Virginia, where he is a contractor in the Department of Veterans Affairs.

On March 21, 2016, Father filed for divorce, in which he included a count for custody of Children. The parties subsequently appeared before Special Master John McLaughlin, Esquire for a custody conference. Following the conference, Master McLaughlin issued his report and recommended order of court, which the trial court later approved. Both parties filed exceptions to Master McLaughlin's report, each raising a challenge to Master McLaughlin's travel ban against Mother, which stated, in pertinent part, as follows:

> c) Mother may not take the children to Russia in 2016 without express authorization from the Court. The trip was simply an issue that could not be negotiated. The Master shall inform the Court of the need for urgency in filing this case. However, the Master notes that during the summer of 2016 the issue arises because Father married a Russian citizen knowing she had family in Russia and can be expected to visit periodically.
>
> d) Beginning in 2017, Mother may vacation in Russia with the children and visit with her parents unless Father obtains an Order of Court to the contrary.

Master's Report and Recommendation, 5/12/16, at 6 (unpaginated).

Specifically, Father argued Master McLaughlin erred by permitting Mother to travel with Children to Russia in 2017. *See* Exceptions to Custody Special Master's Recommendation (Father), 5/13/16, at 1. Conversely, Mother argued that Master McLaughlin erred by prohibiting her from travelling to Russia, as she had historically travelled to the country every summer throughout the parties' marriage. *See* Exceptions (Mother), 5/23/16, at 3-5 (unpaginated).

The trial court held a hearing on Mother's and Father's exceptions. Following the hearing, the trial court issued this order:

> AND NOW, this 24th day of June 2016, after hearing held concerning plaintiff father's exceptions regarding the order pursuant to the Master's recommendations dated May 12, 2016, allowing [Children] to travel to Russia in 2017, and defendant mother's exceptions to said order denying her the right to travel to Russia with the minor children in 2016 without court authorization, the Court orders the following: **Defendant Mother shall not travel with the minor children to Russia without prior court authorization or written authorization of Father in 2016 or subsequent years**.

Order, 6/24/16, at 1 (emphasis in original) (footnote omitted). Neither Mother nor Father filed an appeal.

On August 8, 2016, counsel for Father sent a letter seeking to have a second custody conciliation scheduled. **See** Master's Report and Recommendation, 1/13/17, at 1 (unpaginated). In particular, Father wanted the court to review his obligation to pay for the transportation of Children to and from visits. **See id**. Master McLaughlin held a conference and recommended that transportation be shared equally by the parties. **See id**., at 5 (unpaginated). And the court accepted the recommendation. Mother filed exceptions to the recommendation, but the parties reached an agreement.

On February 27, 2017, Mother filed a motion to authorize travel. The court held a hearing and incorporated by reference the testimony from the June 24, 2016 hearing. Following the hearing, the court denied Mother's motion and affirmed the prior custody order. Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***R.L.P. v. R.F.M.***, 110 A.3d 201, 207-208 (Pa. Super. 2015) (citation omitted).

Mother's first and third issues are interrelated and can be addressed together. Mother argues the trial court relied on evidence outside of the record and ignored the applicable international agreements, thus abusing its discretion. Specifically, Mother asserts, "the trial court [ ] based its decision entirely on a presumption of international instability between the United States and the Russian Federation affecting custody proceedings, for which no evidence was provided by either party" and ignored evidence that Russia is a signatory to the Hague Convention. Mother's Brief, at 14, 22-23. The testimony from which Mother complains states:

THE COURT: I remember this really vividly from last time. [Attorney for Mother] you make a good point. Your client comes across nice. Her daughter is an all[-]star. I sure as heck hope she doesn't go back. We need her here. But, it is so unstable, the relationship right now.

[ATTORNEY FOR MOTHER]: Excuse me, your Honor?

THE COURT: The relationship between the two countries is so unstable. I mean it is so unstable. So you see where I am going

on that. If I could throw in, last year there was an option, and I don't know if, [Father], that option is available where splitting things so to speak, and doing the transfer in Germany in the middle of the two weeks if it is a four week visit over there. Is that still available, that option? I think you guys came up with it last year.

\* \* \*

THE COURT: I cannot change the order without a compromise such as the one. And I will entertain that compromise. In fact, I will entertain that proposal with an appropriate order to let one go at a time. I would entertain that. And, beyond that, I am not going to change the order from last year. And, if the whole purpose of this is to have the children be aware of their heritage and Russian heritage and so forth, which I think seems decent and a good idea, except for the instability of the two countries. But aside from that, I can't see making an order. I will keep my mind open on that if you want to think about that.

[ATTORNEY FOR MOTHER]: I guess I am asking that the Court please consider the things that were presented, especially the treaty that was entered and is still binding.

THE COURT: I do, but as we speak Comey is speaking in Washington, and the relationships were going to be friendly between the new administration over there and have cooled off apparently. But who know[s]. And it is so uncertain as to what is going on between these two countries. I mean, it was bad enough last year, but it seems more uncertain and unstable at this time. I mean, there is no way I am going to do an order to allow the kids to go over and say, "oh, if you don't come back we are going through the legal system." I mean our legal system is pretty predictable. But, I don't know if the Russian one is that predictable. I mean, it is not predictable at all.

N.T., 3/20/17, at 43-45. Mother also contends Father was required to offer expert testimony in support of his theory concerning the international relations between the countries. *See id*., at 16-17.

Mother waived these claims. It is well-settled that "[i]n order to preserve an issue for appellate review, a party must make a timely and specific

- 5 -

objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue." *In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010) (citation omitted)); *see also* Pa.R.A.P. 302(a). Mother failed to make any objection to the trial court's statements. Because Mother failed to object to the trial court's statements at the March 20, 2017 hearing, these two issues on appeal merit no relief.

Even if we had not found waiver, had we addressed the issues on the merits, we would have concluded that the trial court did not abuse its discretion. While Mother presented evidence concerning the Hague Convention and the degree of Russia's participation, the trial court was free to weigh this evidence as it saw fit. Likewise, this Court has stated the following with regard to the taking of judicial notice:

> Pa.R.E. 201 governs judicial notice of adjudicative facts. The rule states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b). A fact is indisputable if it is so well established as to be a matter of common knowledge. Judicial notice is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proved is so well known that evidence in support thereof is unnecessary.
>
> Judicial notice allows the trial court to accept into evidence indisputable facts to avoid the formality of introducing evidence to prove an incontestable issue. However, the facts must be of a matter of common knowledge and derived from reliable sources "whose

- 6 -

> accuracy cannot reasonably be questioned." Pa.R.E.
> 201(b)(2).

***Kinley v. Bierly***, 876 A.2d 419, 421 (Pa. Super. 2005) (citations to cases omitted).

Here, the trial court took judicial notice of the fact that the United States and Russia have had—and continue to have—a contentious relationship for many years. "Generally, matters of history, if sufficiently notorious to be the subject of general knowledge, will be judicially noticed." ***Fatemi v. Fatemi***, 537 A.2d 840, 847 (Pa. Super. 1988) (citation omitted). Accordingly, under the facts of this case, we find no error in the trial court's actions.

Next, Mother claims the trial court abused its discretion by failing to consider Children's relationships with Mother's extended family when determining the best interests of Children. She suggests the trial court abused its discretion "in trying to force the extended family to travel to the United States rather than allow the minor children to travel to the extended family." Mother's Brief, at 20. Again, Mother's issue warrants no relief.

The crux of Mother's claim is the trial court's alleged failure to afford the appropriate weight to the importance of Children's relationships with Mother's extended family. Our standard of review makes clear, however, that "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." ***R.L.P.***, 110 A.3d at 207-208. There is substantial evidence supporting the findings made by the trial court and, in fact, the trial court did consider

Children's relationship with Mother's extended family. Accordingly, because Mother asks us to re-weigh the evidence, she is not entitled to relief on this issue.

Mother's fourth issue asserts the trial court exhibited bias against the Russian Federation and its citizens. Mother cites several instances where the trial court's adverse rulings against her allegedly evidence the court's attitude toward her and her country of citizenship, complaining that the trial court "verbalized several statements indicating a preference against the Russian Federation," and that this Court must reverse the court's decision as a result of the trial court's bias. Mother's Brief, at 26. We disagree.

Mother does not specifically argue for the trial court's recusal; therefore, she phrases her claim in the guise of an abuse-of-discretion standard relating to her previous claims. However, we have already concluded that the trial court did not abuse its discretion in fashioning the instant order. Moreover, we have examined Mother's specific allegations of bias, and we find no merit to her claim. Mother's allegations of bias consist of nothing more than disagreements between the trial court and counsel, and the trial court's effort to clarify testimony. Accordingly, we find no merit to Mother's claims.

For Mother's final issue, she argues that the trial court erred by failing to consider each of the sixteen factors that must be considered pursuant to

23 Pa.C.S.A. § 5328(a) in its June 24, 2016[2] and March 20, 2017 orders. Mother also argues the trial court did not provide its rationale for its decision, as required by § 5328(d).

The trial court does not address Mother's assertion that it erred by failing to consider the § 5328(a) factors. Rather, the trial court concluded that, "[a]s to a best interest analysis, simply stated, it is in the best interests of the children to have contact with both parents. It is in the best interest of the minor children to not be subjected to an international legal dispute." Trial Court Opinion, 4/7/17, at 4.

With any custody case decided under the Custody Act, the paramount concern is, of course, the best interests of the child. **See** 23 Pa.C.S.A §§ 5328 and 5338. And, upon petition, a trial court may modify a custody order if it serves the best interests of the child. **See** 23 Pa.C.S.A § 5338(a).

The Custody Act sets forth the best interest factors the trial court is to consider. **See** 23 Pa.C.S.A § 5328(a)(1)-(16). These factors *must* be considered when making an *initial award* of custody, **see** 23 Pa.C.S.A. §

_____

[2] To the extent Mother, in her brief, attempts to argue that the trial court erred by failing to consider the § 5328(a) factors in its June 24, 2016 order, her claim is waived for two reasons. First, Mother was required to challenge the ruling within thirty days of the June 24, 2016 order. **See** Pa.R.A.P. 903(a) Mother's attempt to raise this issue *now* is untimely. Second, even if Mother's appeal was timely, Mother did not raise this issue in her Rule 1925(b) statement. **See Dietrich v. Dietrich**, 923 A.2d 461, 463 (Pa. Super. 2007) ("When an appellant files a Pa.R.A.P. 1925(b) statement, any issues not raised in that statement are waived on appeal.")

- 9 -

5323(a), or "a modification that also entailed a change to an award of custody," ***M.O. v. J.T.R.***, 85 A.3d 1058, 1062 (Pa. Super. 2014) (footnote omitted). "By contrast, while the court must consider the child's best interest when modifying a custody order, the modification provision does not refer to the sixteen factors of Section 5328." ***Id***. (citing 23 P.C.S.A. § 5338(a)). ***See also S.W.D. v. S.A.R.***, 96 A.3d 396, 403 (Pa. Super. 2014).

Here, Mother sought to travel with Children during her *regularly allotted custody time*. Mother did not challenge the parties' award of custody nor was "a modification that also entailed a change to an award of custody" ever at issue. Thus, the trial court was not required to consider the § 5328 factors before ruling on discrete and ancillary issues completely subsidiary to the award of custody.[3] The trial court correctly considered Children's best interests.

In summary, we find the trial court did not abuse its discretion in denying Mother's motion to authorize travel.

Order affirmed.

President Judge Gantman joins the memorandum.

President Judge Emeritus Ford Elliott files a concurring statement.

---

[3] We are aware of this Court's opinion in ***A.V. v. S.T.***, 87 A.3d 818 (Pa. Super. 2014). However, ***A.V.*** involved a direct modification of the "type" of custody (from shared physical to partial physical custody) and substantially reduced Father's time with the children. ***A.V.*** is readily distinguishable.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/23/2017</u>